UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MEGAFORCE COMPANY LIMITED,
Plaintiff,
v.
NODESNOW INC.,
Defendant.

Case No. 4:25-cv-08241-KAW

**REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT; ORDER REASSIGNING CASE TO A DISTRICT JUDGE**

Re: Dkt. Nos. 19, 20

On September 26, 2025, Plaintiff Megaforce Company Limited ("Megaforce") filed this action against Defendant NodesNow Inc. ("NodesNow") asserting a claim for breach of contract. Default was subsequently entered against NodesNow, and, on February 6, 2026, Megaforce filed a Motion for Default Judgment. (Dkt. Nos. 19-20.) Therein, Megaforce requests compensatory damages of $1,775,713.36, pre-judgment interest of $281,926.08, and costs of $405. *Id*. No opposition was filed by NodesNow. (Dkt. No. 27.)

On May 7, 2026, the Court held a hearing at which NodesNow did not appear. (Dkt. No. 36.) Having considered the filings and the relevant legal authorities, and for the reasons set forth below, the Court REASSIGNS this case to a district judge with the RECOMMEDATION to GRANT Megaforce's Motion for Default Judgment.

## I. BACKGROUND

### A. Factual Background

Megaforce is a Taiwanese electronics corporation that develops, designs, and sells computers and computer parts. (Compl. ¶¶ 4, 9.)[1] NodesNow is a Delaware corporation and a

[1] The filed Complaint was a redacted version. The unredacted version of the Complaint was filed under seal as Exhibit 5 to Megaforce's Administrative Motion to Seal Portions of the Complaint

United States District Court
Northern District of California

company with business activities consisting of the development, manufacturing, and marketing of digital communication and collaboration solutions, platforms, services, and devices. (Compl. ¶¶ 5, 10.) In November 2022, Megaforce and NodesNow entered into the Design and Built Framework Agreement ("Framework Agreement") to collaborate on the provision of technological solutions, platforms, and devices. (Compl. ¶ 11; Framework Agreement, Compl. ¶ 11, Ex. A.) The Framework Agreement is a valid and binding contract. (Compl. ¶ 30.) By the Framework Agreement, Megaforce agreed to provide multitouch displays with integrated PC systems and sensor technology to NodesNow for use in their software and hardware systems. (Compl. ¶ 1.) In exchange for Megaforce's products and services, NodesNow agreed to a compensation structure including payments for engineering services, prototypes and materials, non-recurring engineering costs, incurred non-recurring engineering costs for the NN-86 design prototype, further service costs, initial mass production units, and delivery costs. (Compl. ¶ 2.) Section 5 of the Framework Agreement, titled "Fees, Remuneration and Billing," set forth the various compensation and payment structures. (Compl. ¶¶ 2, 13-18.)

Under Section 1 of the Framework Agreement, the parties agreed that their first collaboration project would be the development and production of the NN-86 Prototype. (Compl. ¶ 12.) Megaforce undertook to provide multitouch displays with integrated PC systems and sensor technology for use in NodesNow's digital communication and collaboration platforms and, starting in late 2023, began delivering the NN-86 product to NodesNow. (Compl. ¶¶ 2, 20.) Megaforce fully performed its obligations under the Framework Agreement, including by supplying NodesNow with the agreed-upon products and services and the development and delivery of the NN-86 product beginning in late 2023. (Compl. ¶¶ 2-3, 20-21, 31.) Despite Megaforce's complete performance, NodesNow failed to make payment on six invoices issued between March 2023 and May 2024. (Compl. ¶¶ 21, 32.) The total amount of the unpaid invoices is $819,317.17 (Compl. ¶ 21), and is broken down as follows:

---

and Exhibits Attached Thereto (*See* Dkt. No. 3 and Unredacted Complaint at Dkt. No. 3-5), which the Court granted on October 20, 2025. (*See* Dkt. No. 12).

(a) $417,246.88 for Delivery Costs under Section 5.7 of the Framework Agreement, which provides:

> MEGAFORCE is entitled to invoice appropriate delivery costs and custom clearance costs (together "DELIVERY COSTS") to NODESNOW without any markup and on a cost basis. . . . The DELIVERY COSTS shall be invoiced on the day of delivery at the DELIVERY LOCATION with a payment term of sixty (60) days.

(*See* Compl. ¶¶ 18, 21(a), 32.)

(b) $167,930 for Engineering Services under Section 5.1, which provides:

> Engineering service hours shall be remunerated on a monthly basis based on the service fee outlined in ANNEX 5.1 attached to this FRAMEWORK AGREEMENT. Latest on the 15th of each month, MEGAFORCE shall submit an invoice to charge for the service hours rendered in the respective previous month with a payment term of sixty (60) days.

(*See* Compl. ¶¶ 14, 21(b), 32.)

(c) $149,731.78 for Further Service Costs under Section 5.5, which provides in part:

> Both PARTIES agree that MEGAFORCE is entitled to claim further service and material costs in connection with the development and production of the NN-86 DESIGN PROTOTYPE in the amount of USD 149,731.78. Both PARTIES hereby agree that such costs shall be paid by NODESNOW as follows:
>
> 100% of these costs shall be invoiced by MEGAFORCE on the date of the first delivery of MASS PRODUCTION UNITS to NODESNOW according to Section 4.7 with a payment term of sixty (60) days.

(*See* Compl. ¶¶ 16, 21(c), 32.)

(d) $84,408.51 for interest on the letter of credit under Section 5.6.2, which provides in part:

> (b) Regarding 75% of the PURCHASE PRICE according to the respective MONTHLY BINDING ORDER (i.e. for one respective month only), NODESNOW shall provide MEGAFORCE with an irrevocable letter of credit in favor of MEGAFORCE two (2) weeks prior to the scheduled day of shipment.

(*See* Compl. ¶¶ 17, 21(d), 32.)

In addition, NodesNow failed to pay the remaining balance of $490,000 for 490 of the initial 1,000 Mass Production Units under Section 5.4, which provides in part:

> The remaining USD 1,000,000.00 shall be amortized throughout the initial 1,000 MASS PRODUCTION UNITS and thus USD 1,000.00 shall be separately invoiced by MEGAFORCE for each of the first 1,000 MASS PRODUCTION UNITS ordered by NODESNOW.

(*See* Compl. ¶¶ 15, 22, 33.) NodesNow made partial payments for 510 of the initial 1,000 Mass

Production Units totaling $510,000, but failed to pay the remaining $490,000, which was due on May 31, 2024, and remains unpaid. (*See* Compl. ¶¶ 22, 33.)

Further, NodesNow failed to pay $466,396.19 for components and materials ordered by Megaforce pursuant to the initial binding order of 1,000 Mass Production Units under Section 5.4. (*See* Compl. ¶¶ 23, 34.)

In total, NodesNow owes Megaforce $1,775,713.36 under the Framework Agreement. (*See* Compl. ¶ 24.) Despite Megaforce's repeated demands for payment, including formal demand letters sent on January 21, 2025, and February 26, 2025, NodesNow has refused to pay the outstanding amounts owed in breach of the Framework Agreement. (*See* Compl. ¶¶ 25-27, Exs. B-C.)

**B. Procedural Background**

On September 26, 2025, Megaforce filed the instant action against NodesNow alleging breach of contract. (*See* Dkt. No. 1.) The Complaint seeks to recover $1,775,713.36 in total outstanding and overdue amounts allegedly owed by NodesNow to Megaforce under the parties' Framework Agreement, along with pre-judgment and post-judgment interest and costs. (*See* Compl. ¶¶ 1-3 and Prayer for Relief.)

On October 6, 2025, Megaforce initiated service on NodesNow's Registered Agent who was personally served with a copy of the (1) Summons; (2) Complaint; (3) Administrative Motion to Seal Portions of the Complaint and Exhibits Attached Thereto Pursuant to L.R. 7-11 and 79-5; (4) Declaration of I-Chiu Liu in Support of the Administrative Motion to Seal; (5) Declaration of Tae H. Kim Pursuant to L.R. 7-11(a) in Support of the Administrative Motion to Seal; (6) Proposed Order Regarding the Administrative Motion to Seal; (7) Order Setting Initial Case Management Conference and ADR Deadlines; (8) Consent or Declination to Magistrate Judge Jurisdiction; (9) Standing Order for Magistrate Judge Kandis A. Westmore; and (10) Standing Order for All Judges of the Northern District of California Contents of Joint Case Management Statement. Megaforce subsequently filed an Affidavit of Service to that effect. (*See* Dkt. No. 9.)

The deadline for NodesNow to respond to the Complaint was October 27, 2025. *See* Fed. R. Civ. P. 12(a). On November 7, 2025, after NodesNow failed to respond to the Complaint,

Megaforce requested entry of default against NodesNow. (Dkt. No. 14.) On November 17, 2025, the Clerk entered default against NodesNow. (Dkt. No. 15.)

On February 6, 2026, Megaforce filed a Motion for Default Judgment. (Pl.'s Mot., Dkt. No. 19 (redacted); Dkt. No. 20 (sealed)). No opposition was filed by NodesNow. (*See* Dkt. No. 27.) On March 17, 2026, the Court granted Megaforce's Administrative Motion to Seal Portions of the Motion for Default Judgment and Exhibits Thereto. (Dkt. No. 29.) On May 7, 2026, the Court held a hearing at which NodesNow did not appear. (Dkt. No. 36.) NodesNow has not appeared in this action personally or by a representative.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a default judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d at 712 ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.")

#### i. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332(a)(2), district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of a State and citizens or subjects of a foreign state." A corporation is a citizen of the state it was incorporated in and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Here, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because (i) the amount in controversy exceeds $75,000, exclusive of interest and costs (Compl. ¶¶ 3, 6, 24, 35); and (ii) complete diversity exists because this matter is between a citizen of a foreign state (Megaforce, a Taiwanese corporation) and a citizen of a State of the United States (NodesNow, a Delaware corporation). (Compl. ¶¶ 4-6.)

#### ii. Personal Jurisdiction and Venue

Personal jurisdiction over NodesNow is also satisfied because NodesNow consented to the exclusive jurisdiction of California courts in the Framework Agreement. Specifically, NodesNow agreed that the Framework Agreement is governed by California law and that "[a]ny dispute, controversy or claim arising out of or in connection with or in relation to this FRAMEWORK AGREEMENT … *shall* be submitted to the competent courts in California, USA." (Compl. ¶ 7; Framework Agreement §§ 15.1 and 15.2) (emphasis added). Consent via a valid forum selection clause in a freely negotiated commercial agreement confers personal jurisdiction irrespective of the parties' contacts with the contractually selected forum. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406-07 (9th Cir. 1994). Accordingly, the exercise of personal jurisdiction over

NodesNow is proper.

Additionally, venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(3) because NodesNow is subject to personal jurisdiction in this judicial district pursuant to the above-referenced forum selection clause.

**iii. Service of Process**

As described above, NodesNow's designated registered agent was personally served with the summons and complaint (and all other documents required to be served) on October 6, 2025 pursuant to Fed. R. Civ. P. 4, as set forth in the Affidavit of Service filed by Megaforce. (*See* Dkt. No. 9.) Thus, service was proper.

**B. Application of *Eitel* Factors to the Case at Bar**

As set forth below, the Court finds that consideration of the *Eitel* factors favors entry of default judgment against NodesNow.

**i. First Factor: Possibility of Prejudice to Megaforce**

Under the first *Eitel* factor, the Court must examine whether Megaforce will be prejudiced if the Court denies default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). One of the most important considerations is whether there is an adequate remedy available at law for plaintiff to use, absent the court granting a default judgment. *Bankers Life & Cas. Co. v. Mallin*, No. 25-CV-02430-RFL, 2025 WL 3186358, at *6 (N.D. Cal. Nov. 5, 2025). In other words, where a failure to grant default judgment would leave the plaintiff without other recourse for recovery or without protection against a defendant's continuing misconduct, default judgment is appropriate. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Absent a default judgment, Megaforce will be prejudiced by the lack of any judicial remedy to recover for the harm it has suffered, while, at the same time, NodesNow would be able to avoid liability, which would reward NodesNow for its refusal to answer or otherwise respond to Megaforce's Complaint. *See Amini Innovation Corp. v. KTY Int'l. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("As the Defendant has not appeared in this action, a default judgment is the only means available for compensating Plaintiff for Defendants' [copyright violations] … [i]f

the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims."). A default judgment is the only judicial resource Megaforce has left to enforce the Framework Agreement and recover for the damages it sustained. Thus, the first *Eitel* factor favors default judgment.

#### ii. Second and Third Factors: Merits of Megaforce's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors (which "are often analyzed together," *see Board of Trs. of The Pac. Coast Roofers Pension Plan v. Fryer Roofing Co. Inc.*, 2017 WL 6539868, at *4 (N.D. Cal. Dec. 21, 2017)), also favor default judgment. Ultimately, the Court must examine whether the plaintiff pleaded facts sufficient to establish and succeed upon the asserted claims. *See PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499−500 (C.D. Cal. 2003). After entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Moreover, a "district court is not required to make detailed findings of fact" when evaluating the merits of a plaintiff's claims for purposes of a motion for default judgment. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Megaforce has sufficiently pled its breach of contract claim. Under California law, which governs here pursuant to Section 15.1 of the Framework Agreement, the elements of a breach of contract claim are: "(1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff." *Perez-Encinas v. Amerus Life Ins. Co.*, 468 F. Supp. 2d 1127, 1137 (N.D. Cal. 2006).

First, a valid and binding contract exists between Megaforce and NodesNow. In November 2022, Megaforce and NodesNow entered into the Framework Agreement, under which Megaforce agreed to develop and deliver the NN-86 product and provide related engineering and production services, and under which NodesNow agreed to a compensation and payment structure in exchange for Megaforce's products and services. (Compl. ¶¶ 1-2, 11-13.) Thus, the Framework Agreement is a valid and binding contract. (Compl. ¶ 30.)

Second, Megaforce fully performed its obligations under the Framework Agreement by



United States District Court
Northern District of California

developing and delivering the NN-86 units to NodesNow and by supplying it with all agreed-upon products and services. (Compl. ¶¶ 2, 12, 20, 31.) In accordance with the Framework Agreement, Megaforce issued six invoices between March 2023 and May 2024 for delivery costs, engineering services, further development costs, and interest on the letter of credit. (Compl. ¶¶ 3, 21, 32; Invoices, Decl. of Allen Huang, "Huang Decl.," Dkt. No. 19-1 (redacted) & Dkt. No. 20-1 (unredacted) ¶ 6, Ex. A.) Additionally, Megaforce sought payment for the remaining balance of $490,000 for 490 of the initial 1,000 Mass Production Units and $466,396.19 for related components and materials ordered by Megaforce. (Compl. ¶¶ 22-23, 33-34; Huang Decl. ¶¶ 7-8.)

Third, NodesNow breached the Framework Agreement (sections 5.1, 5.4, 5.5, 5.6, and 5.7) by failing to make the foregoing payments and causing Megaforce to suffer damages. (Compl. ¶¶ 20-24, 32-36.). Megaforce made repeated informal attempts to obtain payment and ultimately sent formal demand letters on January 21, 2025, and February 26, 2025. (Compl. ¶¶ 25-26.) To date, NodesNow has not disputed the validity or amount of the total outstanding and overdue amount owed, yet, despite the demand letters, it continues to refuse to make payment on the total outstanding amount of $1,775,713.36. (Compl. ¶¶ 3, 27, 35-36.)

These facts establish the existence of a valid and enforceable contract, Megaforce's complete performance, NodesNow's breach of the Framework Agreement through nonpayment, and resulting damages suffered by Megaforce, and, therefore, satisfies all elements of a breach of contract claim. Thus, the second and third *Eitel* factors weigh in favor of granting default judgment.

**iii. Fourth Factor: Sum of Money at Stake**

The fourth *Eitel* factor considers whether the amount of money at stake is reasonable in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471. In evaluating this factor, courts assess whether the requested damages are supported by the pleadings, properly documented, and proportionate to the harm caused. Where the claimed sum is contractually justified and supported by evidence, entry of default judgment is appropriate. *See Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *1-2 (N.D. Cal. Dec. 15, 1997).

Here, the amount at stake, $1,775,713.36, represents unpaid invoices and additional

amounts for the services and products fully performed, provided, and billed pursuant to the parties' Framework Agreement. The damages sought are not unreasonable, but rather they are specific, well-documented, and directly tied to NodesNow's failure to pay for services rendered pursuant to the Framework Agreement. *See City of Newport Beach v. M/Y Bad Habit*, 2017 WL 11632177, at *3 (C.D. Cal. March 8, 2017) (granting motion for default judgment and finding relief proportional to the harm where damages and costs pertained to recovery of unpaid mortgage following defendant's default). Accordingly, this factor weighs in favor of default judgment.

**iv. Fifth Factor: Possibility of Dispute Concerning Material facts**

The fifth *Eitel* factor examines the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471. "[A]ll allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, [meaning that] there is no likelihood that any genuine issue of material fact exists." *JPMorgan Chase Bank, N.A. v. Daniel*, 2024 WL 6841827, at *5 (N.D. Cal. Mar. 13, 2024), *report and recommendation adopted*, 2024 WL 6840858 (N.D. Cal. Apr. 16, 2024) (quotation marks and citation omitted); *Pinterest, Inc. v. Qian Jin*, 2013 WL 5460821, at *2 (N.D. Cal. Sept. 30, 2013) ("Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.")

First, NodesNow has not participated in this action and has not made any attempts to contest any of Megaforce's material facts or legal assertions, moved to set aside the Clerk's entry of default, or opposed Megaforce's motion for default judgment. Thus, the possibility of a dispute regarding NodesNow's liability for damages is unlikely. Second, as explained above, Megaforce filed a well-pleaded complaint sufficiently alleging the elements necessary to prevail on its breach of contract claim and recover the amounts due and owing under the Framework Agreement. Accordingly, there is no likelihood that any genuine issue of material fact exists in this matter, and this factor weighs in favor of default judgment.

**v. Sixth Factor: Whether Default was a Result of Excusable Neglect**

Under the sixth *Eitel* factor, courts consider whether the defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. This factor favors default judgment when the

defendant was properly served with the summons and complaint because service warns the defendant of the pending action. *See City of Newport Beach*, 2017 WL 11632177, at *4 (granting motion for default judgment).

Here, there is no evidence of excusable neglect in the record. As shown above, NodesNow was properly served with the summons and complaint in accordance with Federal Rule of Civil Procedure 4. Despite proper service and notice of this action, NodesNow has refused to plead, defend, or appear. Accordingly, this factor favors default judgment.

**vi. Seventh Factor: Policy Favoring a Decision on the Merits**

In *Eitel*, the Ninth Circuit stated that "[c]ases should be decided on the merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The courts have recognized, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation omitted). The existence of Federal Rule of Civil Procedure 55(b) indicates that the "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* Defendant has not participated in the proceedings and so a decision on the merits would not otherwise be possible. In this situation, Rule 55(b) permits the court to grant default judgment.

After an examination of the *Eitel* factors in the aggregate, the Court finds that *Eitel* factors one through six outweigh the preference for a decision on the merits. The undersigned, therefore, recommends the entry of default judgment.

## IV. RELIEF SOUGHT

Where the factual allegations in the complaint establish a sufficient legal basis for entry of default judgment, the court must then determine the appropriate amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (explaining that upon default all factual allegations in the complaint are taken as true except for those relating to the amount of damages). Moreover, under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**i. Unpaid invoices**

As explained above, Megaforce adequately pleaded its claims for breach of contract

United States District Court
Northern District of California

sufficient to recover compensatory damages in the amount owed for services and products rendered under the Framework Agreement. In the Complaint, Megaforce asserts that it is owed $1,775,713.36 under the Framework Agreement. (Compl. ¶¶ 20-24, 32-35). The Complaint also seeks prejudgment and post-judgment interest. (*See* Compl. at Prayer for Relief, subsection (b)).

California Civil Code § 3287(a) provides that a party entitled to recover "damages certain, or capable of being made certain by calculation," is also entitled to pre-judgment interest from the date the right to recover vested. Cal. Civ. Code § 3287(a). Damages are deemed certain when the defendant "actually knows the amount owed" or can compute it from "reasonably available information." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774 (2002). In the absence of an agreed-upon rate, the applicable interest rate is ten percent per annum. Cal. Civ. Code § 3289(b).

Megaforce's claimed damages are deemed certain because they are based on the actual amounts owed as computed from reasonably available information in Megaforce's possession (e.g., invoices and the Framework Agreement) and are further supported by the declaration of Allen Huang, Megaforce's AVP, documenting the non-payments involving the remaining balance for initial Mass Production Units and related components and materials totaling $1,775,713.36. (*See* Huang Decl. ¶¶ 5-11.) Mr. Huang's declaration is consistent with the facts and damages alleged in the Complaint.

For example, Mr. Huang attests to the parties' entry of the Framework Agreement under which Megaforce agreed to develop and deliver the NN-86 product and provide related engineering and production services to NodesNow, in exchange for NodesNow's agreement to the compensation and payment structures set forth in Section 5 of the Framework Agreement. (Huang Decl. ¶ 5.) Mr. Huang further attests to NodesNow's failure to make payments on the invoices issued pursuant to Sections 5.1, 5.5, 5.6, and 5.7 of the Framework Agreement. (Huang Decl. ¶ 6.) Mr. Huang attached true and correct copies of those invoices to his Declaration. (*See* Huang Decl. ¶ 6, Ex. A.)

Additionally, Mr. Huang also attested to NodesNow's failure to pay the remaining balance of $490,000 for 490 of the initial 1,000 Mass Production Units, and $466,396.19 for related

components and materials ordered by Megaforce. (Huang Decl. ¶¶ 7-8.) Finally, Mr. Huang attested to the repeated demands by Megaforce for payment, including the demand letters of January 21, 2025 and February 26, 2025, and the total outstanding balance due to Megaforce. (Huang Decl. ¶¶ 9-11.)

Accordingly, the Court finds that Megaforce is entitled to compensatory damages in the amount of $1,775,713.36 for the unpaid invoices and recommends that this amount be awarded on default judgment.

**ii. Interest**

Next, Mr. Huang's declaration adequately supports the amount of pre-judgment interest pursuant to California Civil Code § 3289, which is calculated from the date each invoice or amount became due through November 6, 2025, at a rate of 10%. The total amount of prejudgment interest due on the six outstanding invoices is $281,926.08. (*See* Huang Decl. ¶ 12.) Additionally, Megaforce is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

Accordingly, the Court finds that Plaintiff is entitled to both pre- and post-judgment interest and recommends that the former is awarded in the amount of $281,926.08.

**iii. Costs**

Pursuant to Federal Rule of Civil Procedure 54(d)(1), the prevailing party is entitled to an award of costs unless a federal statute, the Federal Rules of Civil Procedure, or a court order provide otherwise. Here, the Court's docket establishes that Megaforce incurred a filing fee of $405. (*See* Dkt. No. 1; *see also* Dkt. No. 19-2, Wolak Decl. ¶¶ 3-4.) Thus, Megaforce is entitled to recover its filing fee pursuant to Rule 54(d)(1) and 28 U.S.C. § 1920.

## V. CONCLUSION

For the reasons set forth above, the Court REASSIGNS this case to a district judge with the RECOMMEDATION to GRANT Plaintiff Megaforce Company Limited's motion for default judgment against NodesNow as follows:

i. $1,775,713.36 in compensatory damages;

ii. Pre-judgment interest in the amount of $281,926.08; and

iii. Costs in the amount of $405.00.

Additionally, the Court RECOMMENDS that Plaintiff be awarded post-judgment interest in accordance with 28 U.S.C. § 1961.

Finally, no later than 3 days from the date of this report and recommendation, Plaintiff is instructed to serve Defendant with a copy by any means reasonably calculated to provide actual notice, and file proof of service to that effect.

Any party may file objections to these recommendations within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b); *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: June 22, 2026

KANDIS A. WESTMORE
United States Magistrate Judge